# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CHERYL BONYGNE** | : | Case No. 1:18-cv-614 |
| | : | |
| **Plaintiff,** | : | Judge |
| v. | : | |
| | : | |
| **CMFG LIFE INSURANCE COMPANY dba CUNA MUTUAL GROUP** | : | COMPLAINT FOR MONETARY DAMAGES AND PUNITIVE DAMAGES |
| | : | |
| | : | [Demand for Jury Trial] |
| **Defendant.** | : | |
| | : | |

Now comes Plaintiff Cheryl Bonygne ("Plaintiff"), by and through counsel, and for her complaint against Defendant CMFG Life Insurance Company dba CUNA Mutual Group ("CUNA") hereby states as follows:

1. Plaintiff is a resident of Hamilton County, Ohio.

2. CUNA is an Iowa corporation with its principal place of business in Madison, Wisconsin.

3. This Court has original jurisdiction of the matters raised in this Complaint under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

4. Venue in this Court is proper under 28 U.S.C. § 1391 because CUNA conducts business and has contacts within this district sufficient to subject it to personal jurisdiction in the Southern District of Ohio.

1

## FACTS

5. Plaintiff incorporates the allegations above as if fully restated here.

6. Plaintiff was previously married to Jeffrey Bonygne.

7. In 2004, Jeffrey Bonygne's employer purchased a Flexible Premium Variable Universal Life Insurance Policy (the "Policy") from CUNA for Mr. Bonygne.[1]

8. The Policy was assigned to Mr. Bonygne in 2005, at which time Mr. Bonygne was the owner of the Policy, and the insured under the Policy.

9. Joseph Stearns, an insurance agent in Toledo, Ohio, sold the Policy and managed it on Mr. Bonygne's behalf from 2004 to 2006.

10. Mr. Stearns retired in 2006, at which point CUNA took control of all the policies that Stearns managed on behalf of CUNA, including the Mr. Bonygne's Policy.

11. Upon information and belief, after Mr. Stearns retired, CUNA never appointed a new agent to service the Policy, thereby rendering it an "orphan policy" as that term is used in the life insurance industry.

12. Between 2005 and 2010, Mr. Bonygne and Plaintiff split their time between their main residence in Grand Rapids, Michigan and Cincinnati, Ohio, where they operated a business.

13. In 2009, Mr. Bonygne filed for divorce from Plaintiff in Grand Rapids, Michigan.

14. The divorce was finalized in 2010, and Mr. Bonygne was ordered to pay spousal support to Plaintiff by the Kent County, Michigan Domestic Court.

---

[1] A copy of the Policy is included within Exhibit B.

15. In 2010, Plaintiff moved her permanent residence from Grand Rapids, Michigan to Cincinnati, Ohio.

16. Around that same time Mr. Bonygne moved out of the country to Austria, where he resided until his death.

17. Mr. Bonygne never paid the spousal support due to Plaintiff. Therefore, Plaintiff's divorce attorney, Christian Krupp, filed a motion with the Kent County, Michigan Domestic Court seeking to secure Plaintiff's interest in the Policy.

18. On February 8, 2013 the Kent County court ordered CUNA to make Plaintiff the "irrevocable beneficiary" of the Policy, and further ordered that: "CUNA…shall not allow [Mr. Bonygne] to take any loans, cash, dispose of or liquidate any amount of cash value in life insurance policies currently being held by them." A true and accurate copy of the court's order is attached as **Exhibit A**.

19. The court order explicitly imposed duties upon CUNA to preserve the Policy for Plaintiff's benefit.

20. The court order further entitled Plaintiff, as the irrevocable beneficiary of the Policy, to be paid $2,225,000.00 upon Mr. Bonygne's death.

21. Mr. Krupp provided CUNA a copy of the court order on February 11, 2013.

22. Shortly thereafter, Mr. Krupp requested that CUNA provide records of the Policy and to confirm that CUNA had complied with the court order by identifying Plaintiff as the irrevocable beneficiary of the Policy.

23. CUNA responded to Mr. Krupp by letter dated March 22, 2013 in which CUNA alleged that it did not have to comply with the court order.

24. Unbeknownst to Mr. Krupp and Plaintiff at the time, a premium payment for the Policy was missed in July 2013.

25. Although Mr. Krupp was actively seeking information on the Policy at this time, CUNA never notified Mr. Krupp of the missed payment.

26. Under the terms of the Policy, Mr. Bonygne had a grace period of three months in which to pay the premiums owed to prevent the Policy from lapsing.

27. Thus, when the premium wasn't paid in July 2013, CUNA unequivocally knew the following: (1) CUNA was not to allow Mr. Bonygne to dispose of the Policy; (2) Plaintiff was the irrevocable beneficiary of the Policy; (3) Mr. Bonygne had moved out of the country and had failed to pay spousal support due to Plaintiff; (4) No agent was overseeing the Policy and Mr. Bonygne's interests; and (5) Plaintiff's interests were being represented by Mr. Krupp.

28. Despite this knowledge, CUNA chose not to notify Mr. Krupp that the premium had not been paid and that the Policy was in danger of being terminated.

29. CUNA allegedly mailed a notice of the missed premium payment to Mr. Bonygne in Austria in July 2013, but CUNA did not provide a copy of this notice to Mr. Krupp.

30. Had Plaintiff been made aware of this issue in July 2013, she would have had a variety of options to ensure that the Policy would not lapse, including without limitation, paying the premiums herself, or obtaining an order to reduce the death benefit to keep the Policy in force without having to pay additional premiums.

31. Even when the Policy allegedly lapsed in September 2013 there remained a five-year period to apply for reinstatement of the Policy.

32. CUNA allegedly mailed a notice of opportunity to reinstate the Policy to Mr. Bonygne in Austria in September 2013, but again chose not to provide a copy of this notice to Mr. Krupp.

33. In November 2013, eight months after Mr. Krupp initially demanded that CUNA provide information related to the Policy, CUNA finally responded to Mr. Krupp's subpoena.

34. By letter dated November 22, 2013, CUNA stated, "Enclosed are the records pertaining to Jeffrey Bonynge." The documents enclosed consisted of the actual Policy, a record of a loan against the Policy that had been satisfied, and the application for purchase of the Policy. A true and accurate copy of the letter and enclosure are attached as **Exhibit B**.

35. When CUNA sent this correspondence, it knew that it considered the Policy to have lapsed and entered the five-year reinstatement period.

36. Yet, nothing in the documentation provided to Mr. Krupp indicated that the Policy had lapsed, and CUNA did not otherwise notify Mr. Krupp of this fact, or the right to apply for reinstatement.

37. CUNA intentionally concealed this information while feigning compliance with the subpoena, thereby misleading Mr. Krupp and Plaintiff as to the status of the Policy.

38. After reviewing the documents provided by CUNA in November 2013, Mr. Krupp again contacted CUNA to inform it that he still did not have any evidence that CUNA complied with the court order.

39. In response, CUNA sent a letter to Mr. Krupp dated January 28, 2014 that simply said that Plaintiff was designated as an irrevocable beneficiary in February 2013 pursuant to the court order. A true and accurate copy of this letter is attached as **Exhibit C**.

40. Again, CUNA had the opportunity to notify Mr. Krupp that the policy had lapsed, and again CUNA chose to remain silent on the subject.

41. In October 2015, Mr. Krupp again tried to ensure that Policy was in place to protect his client's future. he issued a subpoena to CUNA requesting a "copy of the current cash value of life insurance and copy of beneficiary designation…". A true and accurate copy of the subpoena is attached as **Exhibit D**.

42. Mr. Krupp has no records of CUNA ever responding to this subpoena.

43. Mr. Bonygne passed away on January 18, 2018.

44. Shortly thereafter, Plaintiff notified CUNA of Mr. Bonygne's passing, and requested payment of the death benefits.

45. Plaintiff was then informed for the first time that the Policy had lapsed in 2013. But, she was initially told that the CUNA would pay the death benefits less the amount of premiums due under the Policy.

46. When Plaintiff attempted to follow-up with CUNA representatives, she was told that CUNA would not pay the death benefits under Mr. Bonynge's policy because it lapsed prior to his death.

47. Plaintiff then retained counsel to further investigate the matter.

48. In a letter dated April 20, 2018 to Plaintiff's counsel, CUNA falsely claimed that it informed Mr. Krupp of the Policy lapse in response to subpoenas issued in November and December of 2013. A true and accurate copy of this letter is attached as **Exhibit E**.

49. In that same letter, CUNA falsely claimed that there were no inquiries about the status of the policy after January 2014.

50. In subsequent correspondence, however, CUNA then acknowledged that it received a subpoena from Mr. Krupp's office in October 2015, and further alleged that it faxed documents to Mr. Krupp in response to the 2015 subpoena including a letter stating the policy lapsed in 2013.

51. From 2013 to the present, CUNA has continued to issue contradictory and misleading information to Plaintiff through her attorneys.

52. CUNA knowingly concealed the status of the Policy and Plaintiff's rights to pay premiums, convert the Policy, or have the Policy reinstated.

53. CUNA knowingly and intentionally misrepresented the status of the Policy in order to induce its lapse and prevent CUNA from having to pay $2.25 million in death benefits to Plaintiff.

54. CUNA acted with malicious purpose and in bad faith.

## COUNT ONE
## Breach of Contract

55. Plaintiff incorporates each allegation above as if fully restated here.

56. The Policy is a valid and enforceable contract between CUNA and Mr. Bonygne.

57. Plaintiff, as the irrevocable beneficiary of the Policy, was an intended beneficiary with a right to enforce the Policy against CUNA.

58. The Policy required CUNA to pay death benefits to Mr. Bonygne's beneficiaries in the event of his death.

59. As the sole irrevocable beneficiary of the Policy, Plaintiff was entitled to receive $2.25 million in death benefits under the Policy when Mr. Bonygne passed away in January 2018.

60. CUNA has breached the Policy by refusing to pay the death benefits due to Plaintiff.

61. As a direct and proximate result of the foregoing, Plaintiff is entitled to damages in the amount of $2.25 million plus interest from CUNA.

## COUNT TWO
## Fraud

62. Plaintiff incorporates each allegation above as if fully restated here.

63. As described above, from 2013 to 2015, CUNA made multiple knowing misrepresentations of material facts regarding the status of the Policy to Plaintiff's agent/attorney Mr. Krupp.

64. Additionally, CUNA knowingly concealed material facts pertaining to the Policy from Plaintiff's agent/attorney Mr. Krupp.

65. CUNA intentionally misrepresented and concealed information pertaining to the Policy from Plaintiff in order to induce the lapse of the Policy and prevent the Policy from being reinstated.

66. Plaintiff justifiably relied on the CUNA's misrepresentations and concealments in determining that the Policy was in force to sufficiently protect the rights awarded her by the Michigan courts.

67. After learning of Mr. Bonygne's death in 2018, CUNA made additional fraudulent misrepresentations regarding the history of its communications with Mr. Krupp in an effort to justify its decision not to pay death benefits to Plaintiff and to dissuade Plaintiff from pursuing her right to collect the death benefits.

68. As a direct and proximate result of Plaintiff's justifiable reliance on CUNA's fraudulent misrepresentations and concealments, Plaintiff was prevented from

8

ensuring that Policy remained in force, thereby costing her $2.25 million in death benefits payable under the Policy.

69. As a direct and proximate result of the foregoing, Plaintiff is entitled to an award of damages against CUNA in the sum of $2.25 million, plus attorney fees, costs, interest, and punitive damages.

## COUNT THREE
### Insurance Bad Faith

70. Plaintiff incorporates each allegation above as if fully restated here.

71. CUNA, in bad faith, refuses to make payment under the Policy without reasonable justification.

72. As a direct and proximate result of the foregoing, Plaintiff is entitled to an award of damages against CUNA in the sum of $2.25 million, plus attorney fees, costs, interest, and punitive damages.

## COUNT FOUR
### Equitable Estoppel

73. Plaintiff incorporates each allegation above as if fully restated here.

74. CUNA misrepresented material facts relating to the Policy.

75. CUNA was aware of the true facts relating to the Policy when it made such misrepresentations to Plaintiff and Plaintiff's agent.

76. CUNA made such misrepresentations with the intent that Plaintiff and Plaintiff's agent rely on them in order to induce the lapse of the Policy and/or prevent the Policy from being reinstated.

77. Plaintiff was unaware of the true facts relating to the status of the Policy.

78. Plaintiff detrimentally and justifiably relied on CUNA's misrepresentations in not taking additional steps to ensure the Policy was in force, to pay premiums, to

seek to be named the owner of the Policy, to reinstate the Policy, and/or to take other actions to enforce her rights as the irrevocable beneficiary of the Policy.

79. As a direct and proximate result of the foregoing, Plaintiff is entitled to an award against CUNA in the amount of $2,225,000.00 plus interest.

**WHEREFORE**, Plaintiff Cheryl Bonygne prays for judgment against Defendant CMFG on each count above, including without limitation:

1. An order that Defendant pay the sum of $2,225,000.00 to Plaintiff;
2. An order that Defendant pay punitive damages to Plaintiff, in an amount to be determined at trial;
3. An order that Defendant pay pre and post judgment interest, Plaintiff's attorney fees, and the costs incurred in this action; and
4. Any and all other relief which the Court determines to be just and reasonable.

Respectfully submitted,

/s/ Bradley M. Gibson
Bradley M. Gibson (0087109)
FINNEY LAW FIRM, LLC
1077 Celestial Street, Suite 10
Cincinnati, Ohio 45202
513.943.6661(o)
513.943.6669 (fax)
Brad@FinneyLawFirm.com
*Trial Attorney for Plaintiff Cheryl Bonygne*